**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**CHAMBERS OF**
**TIMOTHY J. SULLIVAN**
**CHIEF MAGISTRATE JUDGE**

**6500 Cherrywood Lane**
**Greenbelt, Maryland 20770**
**Telephone: (301) 344-3593**

November 17, 2026

LETTER TO COUNSEL:

RE: *Tera E. v. Frank Bisignano, Commissioner of Social Security*
Civil No. TJS-25-4147

Dear Counsel:

On December 16, 2025, Plaintiff Tera E. petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits ("DIB"). ECF No. 1. The case has been assigned to me for all proceedings with the parties' consent pursuant to 28 U.S.C. § 636(c) and Local Rule 301.[1] Having considered the submissions of the parties (ECF Nos. 15 & 17), I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will deny both motions and remand the case for further proceedings. This letter explains my rationale.

Tera E. filed her application for DIB on October 27, 2020. *See* ECF No. 17 at 1-2. She alleged a disability onset date of March 23, 2019. *Id.* Her application was denied initially and upon reconsideration. *Id.* A hearing was held before an ALJ on October 10, 2024. *Id.* After conducting the hearing, the ALJ issued a written decision that concluded that Tera E. was not disabled under the Social Security Act. Tr. 23-37. The Appeals Council denied Tera E.'s request for review, making the ALJ's decision the final, reviewable decision of the agency.

The ALJ evaluated Tera E.'s claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Tera E. had not engaged in substantial gainful activity since March 23, 2019, the alleged onset date. Tr. 25. At step two, the ALJ found that Tera E. suffers from the following severe impairments: "migraines; asthma; obesity; neurocognitive disorder; and anxiety disorder." Tr. 25. At step three, the ALJ found that Tera E.'s impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R. Pt. 404, Subpart P, App. 1 ("Listings"). Tr. 26-28. The ALJ determined that Tera E. retains the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl but

---

[1] This case was originally assigned to Judge Douglas R. Miller. On September 9, 2026, it was reassigned to me.

> can never climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to extreme heat, humidity, vibration, fumes, odors, dusts, and hazards such as dangerous machinery and unprotected heights. The claimant can perform simple, routine tasks with no production rate for pace of work (e.g., assembly line work). The claimant can tolerate occasion[al] interaction with general public. The claimant can tolerate noise at no more than the moderate intensity level as defined in the Selected Characteristics of Occupations and typical office lighting.

Tr. 28.

At step four, the ALJ determined that Tera E. has no past relevant work. Tr. 35. At step five, considering the testimony provided by a vocational expert ("VE"), as well as the claimant's age, education, work experience, and RFC, the ALJ determined that Tera E. could perform jobs that exist in significant numbers in the national economy, including routing clerk, marker, garment sorter, weight tester, dowel inspector, and document preparer. Tr. 36.

Tera E. raises multiple challenges to the ALJ's assessment of her ability to work. Because the Court finds that remand is warranted based on the ALJ's assessment of her migraine-related limitations, the Court declines to address her other arguments.

A claimant's RFC represents the most they can still do despite their limitations. 20 C.F.R. § 404.1545(a). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* When evaluating a claimant's RFC, an ALJ must include a narrative discussion describing the evidence that supports it. *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021). In doing so, an ALJ must consider all of a claimant's "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019) (internal quotation marks and citation omitted). The narrative discussion must show "how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at *7. Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC. *Id.*; *Thomas*, 916 F.3d at 311 ("Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion."). An ALJ need not mention every piece of evidence, so long as the ALJ builds a logical bridge from the evidence to the conclusion. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

Tera E. argues that the ALJ failed to properly assess her ability to perform work-related activities on a full-time basis. ECF No. 15 at 10-12. In a related argument, she contends that the ALJ failed to explain how an individual, like Tera E., with moderate limitations in concentration, persistence, or pace would be capable of maintaining these functions for at least 90 percent of the workday. *Id.* at 12-14.

The ALJ found that Tera E.'s migraines constitute a severe impairment. Tr. 25, 30, 32. The ALJ noted that Tera E. "reported having recurring headaches" that "last an hour." Tr. 32. The ALJ

also acknowledged Tera E.'s report to a consultative examiner in 2023 that she has "daily headaches that last up to four hours." Tr. 30. The ALJ explained that during this 2023 examination, "[Tera E.] did not do well with the light, and [the examiner] had to turn down the light in the office." *Id.* This statement is consistent with Tera E.'s reports of difficulty with bright lights, as well as the third-party function report supplied by Tera E.'s mother, which states that Tera E.'s headaches are exacerbated by bright lights. Tr. 29.

Still, the ALJ's findings about the extent and functional impact of Tera E.'s migraines are unclear. The ALJ's decision does not contain a finding as to how often Tera E. suffers from migraines or how long each headache tends to last. While the ALJ points to reports that Tera E. suffers from daily migraines that last up to four hours, the ALJ also cites evidence that medical providers found that "she was in no acute distress" when she appeared for a visit, and evidence that she had "normal neurological examinations" and intact cranial nerves, a normal CT in March 2019, and a normal MRI in June 2022. Tr. 30. The ALJ may have discounted Tera E.'s statements concerning the frequency, severity, and duration of her migraines, but the decision does not adequately explain whether or why the ALJ did so.

The ALJ cites two treatment records to demonstrate that Tera E.'s providers "routinely noted she was in no acute distress." Tr. 32 (citing Ex. 4F/58, 92). Page 58 of Exhibit No. 4F contains part of an October 2021 treatment note. In the note, the provider stated that Tera E. was seen for "persistent post-concussion symptoms, including post-traumatic headaches, dizziness, light and sound sensitivity, and memory problems, after hitting her head (right temporal region) on a printing press at work on 3-23-19." Tr. 743. During the visit, Tera E. reported that she was "about the same as before." *Id.* She was "[s]till getting headaches, dizziness, memory problems, light and sound sensitivity, and claustrophobia." *Id.* Her medication was helping to reduce her headaches. Importantly, she was able to reduce the frequency of her headaches to about once per week by "avoiding her headache triggers (e.g., she will stop doing household chores when she feels a headache coming on)." *Id.* Other activities besides household chores also brought on headaches: extended concentration and reading, lying on her right side, bright lights, and exercise. Tr. 744. The provider stated that Tera E. was "not able to return to work due to her severe, prolonged post-concussion syndrome." *Id.* Although the note indicated that Tera E. was in "no acute distress," it documented the need for the provider to "dim[] the room lights due to photophobia" and concluded that Tera E. "continues to be disabled for her usual job" because of her symptoms. Tr. 745. The note at page 92 of Exhibit No. 4F also documents that Tera E. appeared for treatment while she was not in acute distress. Tr. 779. This treatment note, however, was unrelated to Tera E.'s post-concussion syndrome or her migraines. During this visit, Tera E. presented to an emergency department when she was eight weeks pregnant, experiencing heavy vaginal bleeding, and concerned about an ectopic pregnancy. *Id.* Given the purpose for this medical visit, it is unremarkable that the treatment note does not discuss Tera E.'s migraines.

Without further explanation from the ALJ, neither treatment note gives an adequate basis to discount Tera E.'s statements about the frequency, severity, and limiting effects of her headaches. The same goes for the other evidence that the ALJ cited: intact cranial nerves, normal neurological examinations, and normal CT and MRI results. To the extent that the ALJ intended to rely on this evidence as a basis to discount Tera E.'s statements about her headaches, the ALJ

was required to further explain how he understood the evidence and how he applied this understanding to his analysis.

In addition, the ALJ's RFC determination includes a restriction to work with "typical office lighting." Tr. 28. But the ALJ did not explain how this restriction accommodated Tera E.'s documented sensitivity to light, particularly where medical providers found it necessary to dim the lights during examinations because bright lights make her headaches worse. It may be that the ALJ found that Tera E.'s sensitivity to light did not warrant a more restrictive limitation, but the decision does not explain the basis for such a finding.

It is not the Court's prerogative to weigh or evaluate conflicting evidence. That task belongs to the ALJ. But here, the ALJ's decision does not adequately explain how he evaluated the evidence concerning Tera E.'s migraines or how that evidence supports his RFC determination. Without this explanation, the Court cannot determine whether the ALJ's RFC determination is supported by substantial evidence. The case must be remanded so that the ALJ can further evaluate the frequency, duration, and functional effects of Tera E.'s migraines and explain whether additional RFC limitations are warranted.

For the reasons set forth herein, both parties' briefs, construed as motions for summary judgment (ECF Nos. 15 & 17), are **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is **REVERSED**. The case is **REMANDED** for further proceedings in accordance with this opinion. In so holding, the Court expresses no opinion on the agency's ultimate disability determination.

The Clerk is directed to **CLOSE** this case.

Sincerely yours,

/s/

Timothy J. Sullivan
Chief United States Magistrate Judge